FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 08 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KEITH JOHNSON a/k/a WATURI JOHNSON,

                Petitioner,

— against —

SUPERINTENDENT JUSTIN TAYLOR,

                Respondent.
----------------------------------------------------------------X

**MEMORANDUM and ORDER**

08-CV-2442 (SLT)

**TOWNES, United States District Judge[1]:**

Keith Johnson a/k/a Waturi Johnson ("Petitioner"), who is incarcerated pursuant to a judgment of the New York State Supreme Court, Queens County, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. Proceeding *pro se*, Petitioner challenges his June 8, 2005 conviction for criminal possession of a controlled substance in the third degree on two grounds: (1) his guilty plea was not knowingly, voluntarily, and intelligently made and therefore entered in violation of his constitutional rights and (2) he was denied effective assistance of counsel because his attorney improperly waived his right to testify before the grand jury, and failed to adequately investigate his case. For the reasons set forth below, the petition is denied.

## BACKGROUND

On June 10, 2004, Detective Aretha Williams of the Queens Narcotics District of the New York City Police Department arrested Petitioner after he sold cocaine to an undercover officer inside a house located at 161-18 118th Road in Queens County, New York. Supp. Hr'g Tr. 5:12-6:8. The undercover officer conveyed the description of the man who had sold the drugs to

---

[1] The Court would like to acknowledge the capable assistance of a student intern, Jeremy Hutcher of the Georgetown University Law Center, in the preparation of this Memorandum and Order.

1

him to Detective Williams, who waited outside of the house for the people inside to emerge. *Id.* at 6:20-7:8. Shortly thereafter, a woman named Lynn Cobb left the house, and she was soon arrested by Detective Williams' field team. *Id.* at 7:17. Cobb gave a written statement giving Detective Williams and her field team permission to enter the home after it was clear that the other person in the home was not going to leave the house. *Id.* at 8:11. After entering the house, Detective Williams' team arrested Petitioner in the bedroom of the house. *Id.* at 11:13. Detective Williams observed, and later seized, crack cocaine and money lying next to the bed where Petitioner was arrested. *Id.* at 11:21-23.

Petitioner was subsequently charged with one count of criminal sale of a controlled substance in the third degree and one count of criminal possession of a controlled substance in the third degree. After a suppression hearing, the court ruled that the officers had probable cause to make the arrest, that the officers had entered the house with proper consent, that the drugs and money they seized were admissible, and that the identification by the undercover agent was not the fruit of an unlawful seizure. *See* Mem. in Opp. Ex. A. On June 8, 2005, Petitioner pleaded guilty to one count of Criminal Possession of a Controlled Substance in the Third Degree. *See* N.Y. Penal Law § 220.16(12). The second count was dismissed in accordance with the plea agreement. At his plea hearing, Petitioner was represented by counsel and stated that no one had forced or coerced him to plead guilty. Plea Hr'g Tr. 9:25. He also stated that his plea was entered voluntarily after a discussion with his attorney about the consequences of such a plea. *Id.* at 10:10. Petitioner's plea was in exchange for an indeterminate sentence of four and one-half to nine years.

On June 28, 2005, the trial court, New York State Supreme Court, Queens County (Justice Richard L. Buchter), sentenced Petitioner in accordance with the plea agreement.

Petitioner appealed his sentence to the New York Appellate Division, Second Judicial Department ("Appellate Division"). Petitioner's appellate counsel filed an *Anders* brief, requesting permission to withdraw because no-non-frivolous issue could be raised on Petitioner's behalf. *See* Mem. in Opp. Ex. B. The Appellate Division unanimously rejected Petitioner's appeal and affirmed his sentence on November 27, 2007. *People v. Johnson*, 845 N.Y.2d 755 (N.Y. App. Div. 2007). The New York Court of Appeals denied Petitioner's application for leave to appeal on February 25, 2008. *People v. Johnson*, 10 N.Y.3d 767 (N.Y. 2008).

Concurrent with his direct appeal, Petitioner filed a motion to vacate his judgment of conviction pursuant to N.Y. Crim. Proc. § 440.10. On February 13, 2008, that motion was denied by the trial court. In his motion, Petitioner alleged he did not receive effective assistance of counsel and that his guilty plea was not knowingly, voluntarily, or intelligently made. *See* Pet. at 3. On May 19, 2008, the Appellate Division denied his application for leave to appeal the trial court's decision. On June 12, 2008, Petitioner timely filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.

## DISCUSSION

### I.  Standard of Review

### A.  AEDPA

A federal court may "entertain an application for a writ of habeas corpus" on behalf of an individual in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Under the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), courts will only grant a habeas petition where the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1) - the "contrary to" clause -- a federal habeas court may grant the writ "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Court. *Bell v. Cone*, 543 U.S. 447, 452-53 (2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). Under § 2254(d)(2) - the "unreasonable application" clause -- a federal habeas court may grant the writ if the state court "identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' [sic] of the petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000) (O'Connor, J., concurring).

**B.     Exhaustion**

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy*, 455 U.S. 509, 522 (1989). "This exhaustion requirement is . . . grounded in principles of comity; in a

4

federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Since the trial court heard and ruled on the Petitioner's motion to vacate, in which he raised the same claims as he does in his habeas petition, and the Appellate Division denied him leave to appeal from that decision, his claims are exhausted and properly before this court.

## II. Analysis

### A. Validity of the Guilty Plea

Petitioner challenges his guilty plea, claiming that it was not knowingly, intelligently, or voluntarily made, and therefore entered in violation of his constitutional rights. Under the Constitution, a guilty plea is "valid only to the extent it is voluntary and intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quotation marks omitted). "The test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hewitt v. Griener*, Nos. 01-CV-4552, 03-MISC-0066, 2003 WL 21817384, at *5 (E.D.N.Y. July 22, 2003) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). Petitioner claims that he pleaded guilty only because he did not understand the plea agreement and that because he did not properly allocute to his crimes, his guilty plea was invalid. Pet. at 4-5.

The record of the plea hearing, however, demonstrates that Petitioner considered whether to enter a guilty plea or proceed to trial, and although it caused him distress, he made a voluntary and intelligent choice. *See* Plea Hr'g Tr. 8:1-9:11. Petitioner explicitly stated at the plea hearing

5

that he understood the circumstances of the plea agreement, and that if he chose not to accept the plea, the trial would begin. Plea Hr'g Tr. 8:12-13. Further, during his plea allocution, he stated, under oath, that no one forced or coerced him to plead guilty, and that he pleaded guilty "voluntarily after discussing the matter with [his] attorney." *See* Plea Hr'g Tr. 10:10. On direct appeal, Petitioner's appellate counsel agreed that "no viable argument can be made that [Petitioner's] guilty plea was not knowing, intelligent and voluntary." Pet. App. Brief at 7.[2] Petitioner's plea was voluntary and intelligent, and therefore valid. *See Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004); *King v. Cunningham*, 442 F. Supp. 2d 171, 183 (S.D.N.Y.2006). As a result, the trial court's decision with respect to this issue was not contrary to or an unreasonable application of Federal law. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged . . . [he] may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [*McMann v. Richardson*, 397 U.S. 759, 771 (1970)]." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). As explained below, Petitioner has not asserted facts to support his claim that his attorney was ineffective regarding his guilty plea.

## B. Ineffective Assistance of Counsel

Petitioner's ineffective assistance of counsel challenge is "governed by the two-part *Strickland v. Washington* [466 U.S. 668 (1984)] test." *Tate v. Wood*, 963 F.2d 20, 26 (2d Cir. 1992) (citing *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)); see also *United States v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002). In *Strickland*, the Court wrote: "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

---

[2] "Pet. App. Brief" refers to Petitioner's brief to the Appellate Division, submitted March 8, 2007.

result." 466 U.S. at 686. To evaluate counsel's conduct, the *Strickland* Court crafted and applied a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defendant. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

With respect to the first prong of *Strickland*, Petitioner must demonstrate that counsel's advice "was not within the range of competence demanded of attorneys in criminal cases." *Mann*, 397 U.S. at 771; *see also Tollet*, 411 U.S. at 266 ("The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity."). "To satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The Second Circuit requires "some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (citing *United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998)).

Petitioner claims that he would not have pleaded guilty if he had been effectively represented. Specifically, he claims he was denied effective assistance of counsel because his attorney (1) failed to conduct a proper investigation into the facts underlying his arrest; (2) "[improperly] researched the law in relation to sentencing under the 'new Rockefeller Drug Law'"; and (3) improperly waived Petitioner's right to testify before the grand jury without Petitioner's permission. Pet. at 5-7.

1.  **Failure to Investigate**

7

Petitioner's claim that counsel was ineffective for failing to adequately investigate the factual circumstances surrounding his arrest relies on possible factual defenses to Petitioner's conviction. Specifically, Petitioner claims counsel failed to "investigate the crime scene" as well as examine "the facts surrounding his arrest." Pet. at 7.

"The performance and prejudice prongs of *Strickland* may be addressed in either order, and 'if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Miller v. New York*, 275 F. Supp. 2d 294, 298 (E.D.N.Y. 2003) (quoting *Strickland*, 466 U.S. at 697). "Where the alleged error of counsel is a failure to investigate . . . the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Courts have rejected ineffective assistance of counsel claims where a petitioner "has presented nothing to suggest either what exculpatory evidence would have been discovered through a more thorough defense investigation, nor that a rational factfinder would have found him not guilty." *United States v. Carraballo*, No. S12 98 CR. 1316, 2001 WL 111284, at *4 (S.D.N.Y. Feb. 8, 2001)

To support his claim that he would not have pled guilty had his counsel investigated the crime more fully, Petitioner asserts only that his counsel failed to investigate who had owned the residence where he was arrested, and that this error by counsel played a "major role" in his decision to plead guilty. Mem. in Supp. of Pet. at 14. However, it is clear that even if he did not own the house in which he was arrested, Petitioner's argument is meritless. First, the count to which he pleaded guilty, criminal possession of a controlled substance in the third degree,

8

requires only constructive possession of a controlled substance as an element of the crime. *See* N.Y. Penal Law § 220.16. At trial, Detective Williams would have testified that Petitioner was found in a bedroom, next to cocaine, after he had been positively identified as having sold cocaine to an undercover officer, facts that would have satisfied the element of constructive possession of the cocaine irrespective of whether he owned the house. *See People v. Bailey*, 743 N.Y.S.2d 610, 633 (N.Y. App. Div 2002). Significantly, Petitioner does not allege that Detective Williams would not have testified against him had he gone to trial, and his claim does not suggest that further investigation would have uncovered materials that could contradict her sworn testimony. In addition, he has not alleged that counsel did not take into account these potential weaknesses when he counseled Petitioner to plead guilty. Thus, Petitioner has failed to establish that any lack of an investigation into ownership of the house would have led counsel to change his recommendation as to Petitioner's plea. *See Hill*, 474 U.S. at 59.

Moreover, even if counsel failed to investigate other facts surrounding the arrest, counsel's failure to do so was not unreasonable and did not prejudice Petitioner. *See United States v. Jimenez*, No. 00 CR. 0307, 2002 WL 424325, at *3 (S.D.N.Y. Mar. 18, 2002) (discussing that when overwhelming evidence exists to support a conviction, counsel acted reasonably when he failed to investigate "mitigating circumstances"). Here, the trial court noted that Petitioner received the minimum sentence for his crime, and Petitioner had another charge dismissed in exchange for his plea. Plea Hr'g Tr. 6:9-9:14. The Second Circuit has refused to find ineffective assistance of counsel in cases where defendants have received tangible benefits from a plea agreement negotiated by counsel. *See United States v. Morgan*, 386 F.3d 376, 380 (2d Cir. 2004); *Toban v. United States*, 132 F. Supp. 2d 164, 166 (S.D.N.Y. 2001). Therefore,

Petitioner's claim that he received ineffective assistance of counsel due to an insufficient investigation of both the facts and the consequences of his sentence is without merit.

### 2. Failure to Research the Rockefeller Drug Law Reform

Petitioner claims that his counsel failed to ensure that he would be sentenced under the new sentencing guidelines enacted by the New York State Legislature. *See* 2004 N.Y. Laws Ch. 738. Among other changes, the Drug Law Reform Act of 2004 lessened the sentences of drug offenders and retroactively eliminated life sentences for drug offenses. *See id.* Petitioner claims that he received ineffective assistance of counsel because he should have been sentenced under the new guidelines since he had not been sentenced prior to the change in the law. However, the New York Court of Appeals ruled that the State Legislature did not intend to give retroactive effect to the ameliorative sentencing provisions contained in the Drug Law Reform Act of 2004. *People v. Utsey*, 7 N.Y.3d 398, 403 (N.Y. 2006). Therefore, it is clear that Petitioner was in no way prejudiced by any failure to properly research whether the Drug Law Reform Act applied to his sentence.

### 3. Waiver of the Right to Testify in Front of the Grand Jury

Petitioner claims that counsel waived his right to testify before the grand jury without his permission. However, the right to testify before a grand jury is purely a New York state statutory right, and is not a constitutional right that can lead to relief on habeas review. *See* N.Y. Crim. Proc. Law § 190.50; *United States v. Mechanik*, 475 U.S. 66, 70 (1986); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989). Moreover, given Petitioner's guilty plea, any "alleged defects" in the grand jury process are not cognizable as grounds for habeas relief. *Swanton v. Graham*, No. 07-CV-4113, 2009 WL 1406969, at *11 (E.D.N.Y. May 19, 2009); *see also Crispino v. Allard*, 378 F. Supp. 2d 393, 414 (S.D.N.Y.2005) (holding that when a petitioner "[enters] a voluntary,

knowing, and intelligent guilty plea, any and all non-jurisdictional defects raised in the indictment are waived"). Accordingly, Petitioner's grand jury claim is not cognizable in this federal habeas proceeding.

## CONCLUSION

For the reasons set forth above, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and this action is dismissed. Since Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability is granted with respect to any of petitioner's claims. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order *in forma pauperis* would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: June    , 2010
       Brooklyn, New York

11

knowing, and intelligent guilty plea, any and all non-jurisdictional defects raised in the indictment are waived"). Accordingly, Petitioner's grand jury claim is not cognizable in this federal habeas proceeding.

## CONCLUSION

For the reasons set forth above, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and this action is dismissed. Since Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability is granted with respect to any of petitioner's claims. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order *in forma pauperis* would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: July 6, 2010
Brooklyn, New York